**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Zang X.,

Petitioner,

v.

Todd Blanche, et al.,

Respondents.

No. 0:26-cv-03870 (KMM/EMB)

**ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER**

---

Zang X. (hereafter "Petitioner" or "Mr. X") filed this case on September 2, 2026, seeking a writ of habeas corpus challenging the legality of his ongoing detention by federal immigration authorities. On September 19, 2026, Respondents filed an opposition to Mr. X's petition, noting that Mr. X is subject to a final order of removal, that they have obtained travel documents to remove him to Laos, and that he is scheduled on a removal flight to take place before September 18, 2026. (Dkt. 5; Dkt. 6.) Indeed, Respondents notified the Court and opposing counsel, consistent with the requirements set forth in the Order requiring them to respond to the petition, that Mr. X was scheduled to be transferred out of the District of Minnesota for staging for removal to Laos on a flight scheduled between September 14, and 18, 2026. (Dkt. 7.) Mr. X filed a reply in support of his petition on September 10, and on September 14, he filed a motion for a temporary restraining order ("TRO"). (Reply, Dkt. 8; TRO Mot., Dkt. 9; TRO Mem., Dkt. 10.) In his motion for a TRO, Petitioner asks the Court to issue an emergency order enjoining Respondents from removing him from the United States until his Petition can be decided on the merits and to

order his immediate release from custody pending a merits determination. (Dkt. 9.) Based on this Court's careful review of the entire record in this matter, the TRO motion is denied.

Under the Federal Rules of Civil Procedure, the Court may grant Mr. X's temporary restraining order without notice to Respondents under certain circumstances. Fed. R. Civ. P. 65(b)(1). The purpose of a temporary restraining order is to preserve the status quo pending a hearing. *Alvacora v. Olson*, 826 F. Supp. 3d 1009, 1012 (D. Minn. Jan. 28, 2026). Courts evaluate a request for a TRO under the same standards as a motion for a preliminary injunction. *See Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022). Mr. X's TRO motion may be granted if he shows: (1) he is likely to succeed on the merits; (2) if he is not granted emergency injunctive relief, he will likely suffer irreparable harm; (3) the balance between the harm Mr. X faces and the harm entry of an injunction will inflict on the Respondents weighs in Mr. X's favor; and (4) that an emergency injunction is in the public interest. *See Wilbur-Ellis Co., LLC v. Jens*, 139 F.4th 608, 611 (8th Cir. 2025).

Petitioner has failed to demonstrate that he has a "fair chance of prevailing" on the merits of his habeas petition. *Id.* (explaining that the "probability of success is the most significant" factor in determining whether to grant an injunction). To the extent Mr. X asks the Court to issue a TRO prohibiting his removal from the United States, the Court has serious doubts that it retains the jurisdiction to issue such relief in a case like this one. Indeed, the federal immigration laws provide "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by [the Secretary of the Department of Homeland Security] to commence proceedings, adjudicate

cases, or *execute removal orders* against any alien under this chapter." 8 U.S.C. § 1252(g) (emphasis added).[1]

Nor is the Court persuaded that Mr. X has shown a fair chance of prevailing on the merits of his claim that Respondents violated federal law when they revoked Mr. X's order of supervision. (Dkt. 10 at 9–11.) On April 16, 2009, after Mr. X had been taken into custody when his removal order became final, he was released on an Order of Supervision that allowed him to be in the community subject to several conditions. (Dkt. 6-5.) This order of supervision was issued because, at the time, the government did not have a reasonable likelihood of removing Mr. X from the United States in the near future. So Mr. X was out on supervision for many years following his final order of removal. Then, on August 28, 2026, Petitioner reported to the Immigration and Customs Enforcement ("ICE") office at Fort Snelling pursuant to the requirements of his supervision order. That same day, an ICE agent prepared a notice of revocation of his release. (Dkt. 6-6 at 2 (noting 12:22 p.m. creation of revocation notice)[2]; *see also* Dkt. 6-7 at 2 (same).) ICE agents took him into custody that same afternoon. (*Id.* (noting that Petitioner was taken into custody at

[1] While the Eighth Circuit has provided an exception to the application § 1252(g)'s jurisdiction-stripping provision for cases involving purely legal questions, *Jama v. Immigration and Naturalization Serv.*, 329 F.3d 630, 632 (8th Cir. 2003), *affirmed sub nom. Jama v. Immigration and Customs Enforcement*, 543 U.S. 335 (2005), that exception does not appear to apply in this case.

[2] Petitioner states that the notice of revocation was not created and signed until 2:22 p.m. (Dkt. 10 at 10), but this appears to misread Ex. G to the deportation officer's declaration, which indicates a time of signature of 12:22 p.m. (*See also* Dkt. 6-6 at 2 (Form I-213 report stating that the notice was "created and signed" at 12:22 p.m. on Aug. 28, 2026).)

1:15 p.m.).) The notice of revocation was served on Mr. X two hours after he was taken into custody. (Dkt. 6-7 at 2 (proof of service at 3:15 p.m.).) And later that afternoon, an ICE agent conducted an informal interview in connection with the revocation of the order of supervision. (Dkt. 6-7 at 3.)

The notice of revocation states that Mr. X's release was revoked because of changed circumstances making it likely that he would be removed in the reasonably foreseeable future. (Dkt. 6-7 at 1.) Specifically, the notice explains that "ICE has obtained a travel document and scheduled your removal to take place no later than: 09/18/2026 ." (*Id.*)

This sequence of events appears to comply with the requirements of the Department of Homeland Security's regulations that govern the revocation of an order of supervision. Under the relevant provision of those regulations, DHS "may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, [DHS] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Further, "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release," and an ICE agent "will conduct an initial informal interview promptly after his or her return to . . . custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3).

Although Mr. X was not apparently served with the notice until after he was taken into custody, this does not appear to have violated § 241.13's requirement that notice be provided "upon revocation." *Somvang P. v. Secretary, Dep't of Homeland Sec.*, No. 26-cv-0037 (PJS/EMB), 2026 WL 788853, at *2 (D. Minn. Mar. 20, 2026); *Abraham M. v. Mullin*,

2026 WL 1864079, at *3 (D. Minn. June 29, 2026) (finding no violation of § 241.13(i)(3) where the petitioner received notice of the revocation on the same date he was arrested). In addition, "[t]he issuance of a travel document for an alien by his home country is clearly a 'changed circumstance' that gives ICE the ability to revoke the alien's release under § 241.13(i)(2)." *Somvang P.*, 2026 WL 788853, at *2. The record also shows that ICE conducted an informal interview promptly, as required by the regulation. *Abraham M.*, 2026 WL 1864079, at *4 (finding that an informal interview conducted the same day as an arrest and revocation of an order of supervision complied with § 241.13(i)(3)).

That leaves Petitioner's argument that Respondents have failed to show compliance with § 241.13 in revoking his order of supervision and taking him into custody because the record contains no description of the specific facts considered when making the revocation and custody determination. (Dkt. 10 at 9–11.) True, the regulation provides that DHS "shall consider all facts of the case" when determining whether to grant a noncitizen's request for release, including:

> the history of the alien's efforts to comply with the order of removal, the history of the [government's] efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the [government's] efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.

8 C.F.R. § 241.13(f). And in the provision governing procedures for revoking an order of supervision, the regulation states that the "revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether

the facts as determined warrant revocation and further denial of release." 8 C.F.R. § 241.13(i)(3).

Petitioner argues that because Respondents have not shown that the factors outlined in § 241.13(f) were considered in making the decision to revoke his order of supervision, he is likely to prevail on the merits of his claim that they violated the requirements of the regulation. In support, Petitioner relies on *Jor Y. v. Mullin*, No. 26-cv-3722 (JMB/DJF), 2026 WL 2531850, at *4–5 (D. Minn. Aug. 27, 2026). However, the Court finds *Jor Y.* distinguishable because there, the notice of revocation provided the petitioner with "no reasons in support of their conclusion that [he] w[ould] be removed in the reasonably foreseeable future." *Id.* at *4. Here, by contrast, the notice of revocation specifically explains that ICE had not only obtained a travel document for Mr. X, but also "scheduled [his] removal to take place" within the next few weeks. (Dkt. 6-7 at 1–2.)[3]

For these reasons, the Court finds Petitioner has failed to demonstrate a likelihood of success on the merits. In the absence of such a showing, even assuming Mr. X has demonstrated a threat of irreparable harm if his removal is not enjoined and he is not

[3] The Court also finds Mr. X is not likely to prevail on the merits of his claim that his continued detention violates the Due Process Clause of the Fifth Amendment under the framework established in *Zadydas v. Davis*, 533 U.S. 678 (2001). The record reflects that Mr. X's removal is likely to occur quite soon, which means that he is unlikely to be able to demonstrate that he is at risk of indefinite detention. Respondents have submitted the declaration of a deportation officer who attests that the government has obtained travel documents for Petitioner's deportation to Laos and that he is imminently scheduled to be removed there from the United States. In addition, at least as the record presently stands, Mr. X appears to have waived his *Zadvydas* claim. (Dkt. 10 at 9 (stating that Petitioner "does not presently contend that Respondents cannot establish a likelihood of removal in the reasonably foreseeable future").)

ordered immediately released, the Court cannot conclude that a temporary restraining order would be proper. *See Euphoric, LLC v. Westport Community Improvement Dist.*, 179 F.4th 1118, 1128 (8th Cir. 2026) (explaining that a failure to show likelihood of success on the merits “strong suggests that preliminary injunctive relief should be denied”). In addition, the Court is not persuaded that the balance of harms would weigh in Mr. X’s favor or that the issuance of injunctive relief would be in the public interest without a showing of likelihood of success on the merits. *Oglala Sioux Tribe v. C & W Enterprises, Inc.*, 542 F.3d 224, 233 (8th Cir. 2008) (finding it “unnecessary to assess the remaining factors for injunctive relief” where the plaintiff failed to show a likelihood of success on the merits).

Accordingly, **IT IS HEREBY ORDERED** that Petitioner’s Motion for a Temporary Restraining Order (Dkt. 9) is **DENIED**.

Date: September 14, 2026

*s/Katherine Menendez*
Katherine Menendez
United States District Judge