**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Zang X.,

Petitioner,

v.

Todd Blanche, Attorney General; et al.;

Respondents.

Case No. 0:26-cv-03870-KMM-EMB

**ORDER**

---

This matter is before the Court on Petitioner Zang X.'s ("Petitioner" or "Mr. X") Petition for a Writ of Habeas Corpus. Pet., Dkt. 1. Mr. X claims that Respondents revoked his release on an order of supervision and took him back into custody in an effort to remove him from the United States to Laos in violation of governing regulations. He also claims that his detention is unlawful because his removal is not reasonably foreseeable. For the reasons that follow, the Petition is denied.

Mr. X is a native of Thailand and a citizen of Laos. He entered the United States in December 1991 as a refugee. Since his arrival, Mr. X has been convicted of several crimes. After he was convicted of driving while impaired in Ramsey County District Court in October 2008, the United States initiated removal proceedings against him on December 1, 2008. Minner Decl. ¶ 9, Dkt. 6; *id.*, Ex. B (Notice to Appear). On December 19, 2008, an Immigration Judge ordered him removed from the United States to Laos. Minner Decl., Ex. C (Removal Order). On December 29, 2008, Immigration and Customs Enforcement issued a Form I-205 Warrant of Removal. Minner Decl. ¶ 11; *id.*, Ex. C (I-205 Warrant).

An I-205 is an administrative warrant for taking an individual into custody during the 90-day removal period in which detention of a noncitizen is mandatory pending his removal from the United States pursuant to a final order of removal. *See, e.g.*, *Inti C.-L. v. Blanche*, No. 2026, WL 2474390, at *1 (D. Minn. June 9, 2026) (discussing the purpose of an I-205 warrant of removal); 8 C.F.R. § 241.2(a)(1) (defining the I-205 warrant of removal); 8 C.F.R. § 241.3(a) ("Once the removal period defined in [8 U.S.C. § 1231(a)(1)] begins, an alien in the United States will be taken into custody pursuant to the warrant of removal."). There is no dispute that his removal order is now final.

However, when Mr. X was ordered removed to Laos in December 2008, the government could not deport him there. *See* Order (Sept. 14, 2026) at 3 ("TRO Order"), Dkt. 13. On April 16, 2009, he was released from immigration custody on an Oder of Supervision. Minner Decl. ¶ 12; *id.*, Ex. E (Order of Supervision). Mr. X spent many years out of custody subject to the conditions of that Order of Supervision. That changed on August 28, 2026, when Mr. X reported to the Immigration and Customs Enforcement (ICE) office at Fort Snelling pursuant to the requirements of his supervision order. ICE agents took Mr. X into custody that afternoon. Dkt. 6-6 at 2. Two hours later, ICE agents served Mr. X with a notice of revocation of his Order of Supervision. Dkt. 6-7 at 2. And later that afternoon, an ICE agent conducted an informal interview in connection with the revocation of the supervision order. Dkt. 6-7 at 3.

The notice of revocation indicates that Mr. X's release was revoked because of changed circumstances making it likely that he would be removed in the reasonably

foreseeable future. Dkt. 6-7 at 1. Specifically, the notice explains that "ICE has obtained a travel document and scheduled your removal to take place no later than: 09/18/2026." *Id.*

On September 14, 2026, ICE agents attempted to execute the order of removal by deporting Mr. X to Laos. Dkt. 16-1. However, Mr. X did not cooperate with those efforts, telling the deportation officers that "they would 'have to kill him' to make him go" and refusing to board the plane. *Id.* ICE agents placed Mr. X back into custody at the facility where he is being held. *Id.*

Mr. X was scheduled for a new removal flight on September 30, 2026. Robinson Decl. ¶ 6, Dkt. 21. However, his original travel document expired on September 16, 2026, so he was removed from the September 30th flight. *Id.* ¶¶ 7, 11. On September 25, ICE received notice that a new travel document was approved and is valid for 90 days. *Id.* ¶ 8. Deportation Officer William Robinson explained that commercial flights from the United States to Laos occur regularly. *Id.* ¶ 10. DO Robinson further states that "[u]pon receipt of the renewed travel document, ICE/ERO will schedule Petitioner for commercial removal." *Id.* ¶ 11.

**DISCUSSION**

A federal court can order the release of a person who is detained in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). Mr. X claims that he is unlawfully detained because: (1) ICE failed to properly revoke his Order of Supervision, which the Court will refer to as the revocation claim; and (2) there is no significant

likelihood that Respondents can remove him in the reasonably foreseeable future, which the Court will refer to as the *Zadvdas*[1] claim.

***The Revocation Claim***

Mr. X previously sought a temporary restraining order (TRO) in this case based on the revocation claim. Dkt. 9. In denying his motion for a TRO, the Court found that he was not entitled to emergency injunctive relief because he failed to demonstrate a likelihood of success on the merits. TRO Order at 2–7. Of course, the Court's denial of the TRO motion was not a final determination on the merits of that claim. *See, e.g.*, *PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1143 (8th Cir. 2007) ("In considering the likelihood of the movant prevailing on the merits, a court does not decide whether the movant will ultimately win."). The Court has now fully reviewed the record and adopts the reasoning in its prior Order on the TRO motion as its final decision on the revocation claim.

***The* Zadvydas *Claim***

Under the Immigration and Nationality Act (INA), when a noncitizen has been ordered removed from the United States and that removal order becomes administratively final, the government shall remove the person within a period of 90 days, which is known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). The INA requires the government to detain the noncitizen during the 90-day removal period. 8 U.S.C. § 1231(a)(2). Another provision in the law provides that an "alien ordered removed who is inadmissible . . . may be detained beyond the removal period" when the Attorney General determines that the

---

[1] *Zadvydas v. Davis*, 533 U.S. 678 (2001).

person is "a risk to the community or [is] unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6). However, this post-removal-period detention statute does not set a limit on how long that discretionary detention authority can last.

In *Zadvydas v. Davis*, the Supreme Court placed limits on how long a noncitizen may be detained after the removal period has expired. The Court recognized that "a statute permitting indefinite detention of an alien would raise a serious constitutional problem." 533 U.S. at 690. However, the Court explained that the detention of a noncitizen subject to a final order of removal is permissible so long as the individual's removal is "reasonably foreseeable." *Id.* at 699–700. It held: (1) the detention of an individual for six months or less following a final order of removal is presumptively reasonable; and (2) after six months, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

Mr. X alleges that his removal period ended more than 15 years ago when his December 2008 removal order became final and he could not be removed to Laos. He argues that he has rebutted any presumption of the reasonableness of his continued detention and demonstrated that there is no reasonable likelihood of removal in the reasonably foreseeable future. He therefore claims that he is entitled to an order granting his immediate release from ICE custody pursuant to *Zadvydas*. *See, e.g.*, Pet. ¶¶ 76–80, 102–05. The Court disagrees.

First, even assuming that Mr. X has demonstrated that the presumptively reasonable six-month period of detention recognized by *Zadvydas* has expired, and even if Mr. X has

preliminarily proffered good reason to believe that his removal is not reasonably foreseeable, the Respondents have provided evidence sufficient to rebut that showing. They have presented evidence that they acquired a valid travel document for Mr. X, scheduled him on a commercial flight for deportation to Laos on September 14, 2026, and were prepared to execute his order of removal that day. Further, they have presented evidence demonstrating that it was Mr. X's own conduct that prevented his removal from taking place at that time.[2] Mr. X did not provide any evidence to contradict Respondents' showing that Mr. X refused to cooperate with ICE's efforts to remove him on a September 14th flight. After Mr. X interfered with his own removal, Respondents scheduled him for another removal flight, but the travel document they had for him expired in the interim. However, Respondents presented evidence that a new travel document has been obtained, it is valid for 90 days, flights to Laos from the United States regularly occur, and they will schedule him on a commercial flight as soon as ICE receives the new travel document.

Under these circumstances, Mr. X's detention is not unlawful under the *Zadvydas* framework.

---

[2] "When a noncitizen refuses to cooperate in securing his removal, or actively thwarts the removal process, he can be detained for longer than the *Zadvydas* presumptively reasonable six-month period." *Fahmy v. United States*, 2026 WL 1484690, at *3 (D. Minn. Apr. 14, 2026) (quoting *Williams v. Sessions*, No. 18-cv-2633 (DSD/SER), 2019 WL 234350, at *4 (D. Minn. Jan. 16, 2019)) (cleaned up). If Mr. X cooperates with future efforts of Respondents to remove him from the United States, but for reasons outside of his control they are unable to deport him from the United States, it may be that he would have a better *Zadvydas* claim at some point in the future. However, he cannot currently claim that his removal is not reasonably foreseeable when he created the conditions that prevented it from taking place.

## ORDER

For these reasons, **IT IS HEREBY ORDERED THAT**:

1. The Verified Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**.
2. This matter is **DISMISSED**.

**Let Judgment be entered accordingly**.

Date: October 7, 2026

*s/Katherine Menendez*
Katherine Menendez
United States District Judge